**In re: AREDIA AND ZOMETA PRODUCTS LIABILITY LITIGATION.**

**This Document Relates To Case Number: 3:06–0551 (Simmons).**

**No. 3:06–MD–1760.**

United States District Court, M.D. Tennessee, Nashville Division.

Dec. 7, 2010.

Roy L. Mason, Pamela J. Diedrich, Mason, Cawood & Hobbs, P.A., Anaapolis, MD, for Plaintiff.

Joe G. Hollingsworth, Katharine R. Latimer, Hollingsworth, LLP, Washington, DC, for Novartis.

## ORDER

TODD J. CAMPBELL, District Judge.

Pending before the Court, among other things, is Defendant's *Daubert* Motion to Exclude Causation Testimony of Plaintiffs' Non–Retained Experts (Docket No. 3494). Defendant seeks to exclude any causation opinion testimony from Drs. Smith, Meyer, Haidak, Yazdani, Yeung, Mathur, Obeid and Zamaludin as inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). For the reasons stated herein, Defendant's Motion is GRANTED.

## TESTIMONY OF TREATING PHYSICIANS

As this Court has previously held, generally a treating physician may provide expert testimony regarding a patient's illness, the appropriate diagnosis for that illness, and the cause of the illness. *Gass v. Marriott Hotel Services, Inc.*, 558 F.3d 419, 426 (6th Cir.2009). However, a treating physician's testimony remains subject to the requirement set forth in *Daubert*, that an expert's opinion testimony must have a reliable basis in the knowledge and experience of his discipline. *Id.*[1] A medical doctor is generally competent to testify regarding matters within his or her own professional experience. *Gass*, 558 F.3d at 427–28 (citing *Dickenson v. Cardiac & Thoracic Surgery of Eastern Tenn.*, 388 F.3d 976, 982 (6th Cir.2004)). When, however, the doctor strays from such professional knowledge, his or her testimony becomes less reliable and more likely to be excluded under Rule 702. *Id.*

A treating physician's expert opinion on causation is subject to the same standards of scientific reliability that govern the expert opinions of physicians hired solely for the purposes of litigation. *Bland v. Verizon Wireless (VAW) LLC*, 538 F.3d 893, 897 (8th Cir.2008).[2]

In *Gass*, the Sixth Circuit found that the district court properly permitted the treating physicians to testify regarding symptoms, tests, diagnosis and treatment, but it properly excluded their testimony regarding causation. *Gass*, 558 F.3d at 426–428. The court stated that the ability to diag-

---

**1.** Under *Daubert*, the court, before allowing the expert's testimony, must consider (1) whether the reasoning or methodology underlying the expert's testimony is scientifically valid; and (2) whether that reasoning or methodology could be applied properly to the facts at issue to aid the trier of fact. *Gass*, 558 F.3d at 426.

**2.** In refusing to exempt a treating physician from the requirements of Fed.R.Evid. 702, another court stated that "we do not distinguish the treating physician from other experts when the treating physician is offering expert testimony regarding causation." *Campbell v. CSX Transp., Inc.*, 2009 WL 1444656 at *3 (C.D.Ill. May 21, 2009).

nose medical conditions is not the same as the ability to opine as an expert about the causes of those medical conditions. *Id.* at 426. In *Gass*, nothing in the medical expertise of the treating physicians provided a basis for determining the exact chemical to which the plaintiffs were exposed. *Id.* at 428. In other words, the treating physicians had not demonstrated a scientifically reliable method to support their conclusions as to causation. *Id.* at 426.

The U.S. District Court for the Eastern District of Tennessee has held that there is a fundamental distinction between a treating physician's ability to render a medical diagnosis based on clinical experience and her ability to render an opinion on causation of the patient's injuries. *Wynacht v. Beckman Instruments, Inc.,* 113 F.Supp.2d 1205, 1211 (E.D.Tenn.2000). The injury in *Wynacht* involved exposure to chemicals in a laboratory. The court stated: "The ability to diagnose medical conditions is not remotely the same, however, as the ability to deduce, delineate, and describe, in a scientifically reliable manner, the causes of those medical conditions." *Id.*

 The treating physician for whom no expert report is supplied is not permitted to go beyond the information acquired or the opinion reached as a result of the treating relationship to opine as to the causation of any injury. *Lorenzi v. Pfizer,*

*Inc.,* 519 F.Supp.2d 742, 750, n. 6 (N.D.Ohio 2007).[3]

 To the extent that the source of the facts which form the basis for a treating physician's opinions derive from information learned during the actual treatment of the patient—as opposed to being subsequently supplied by an attorney involved in the litigation—then no Rule 26(a)(2)(B) statement should be required. *Id.* However, when the doctor's opinion testimony extends beyond the facts disclosed during care and treatment of the patient and the doctor is specially retained to develop opinion testimony, he or she is subject to the provisions of Rule 26(a)(2)(B). *Id.*

 Plaintiff's response as to Drs. Yazdani, Yeung, Smith, Mathur and Zamaludin reveals no evidence that these treating physicians are qualified to offer causation opinion testimony in this case. *See* Docket No. 3606. Therefore, Defendant's Motion is GRANTED as to Drs. Yazdani, Yeung, Smith, Mathur and Zamaludin.[4]

 Dr. Haidak is board certified in hematology, oncology and internal medicine. Docket No. 3606–15, p. 11 (pp. 30–31 of Dr. Haidak's deposition). Dr. Haidak testified that he did not consider himself to be an expert on ONJ or risk factors for ONJ during the time he treated Mr. Simmons with Zometa, but he became aware of a possible association between osteone-

---

3. Written reports are not required of all experts, but only those who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. *Hawkins v. Graceland,* 210 F.R.D. 210, 211 (W.D.Tenn.2002). A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report. *Id.* (citing Fed.R.Civ.P. 26 advisory committee's note (1993)). The treating physician is not categorized as an expert witness if he or she testifies about observa-

tions based on personal knowledge, including the treatment of the patient. *Id.*

4. Nothing herein prevents Drs. Yazdani, Yeung, Smith, Mathur and Zamaludin, as treating physicians, from testifying as to Plaintiff's symptoms, tests, diagnosis and treatment, as to what they did in response to Plaintiff's condition and as to what they would have done differently, if anything, had they known of any additional warnings. *See* this Court's prior Orders—*e.g.,* Docket Nos. 2790, 2794, 2798.

crosis of the jaw and bisphosphonates at the "very end" of his treatment of Mr. Simmons. *Id.,* pp. 13–14 (deposition, pp. 41–43) and p. 16 (deposition, p. 53).

Dr. Haidak agreed that to the extent he developed any expertise in ONJ as an oncologist, it occurred after his treatment of Mr. Simmons. *Id.,* p. 17 (deposition, p. 57). As noted above, a treating physician for whom no expert report is supplied is not permitted to go beyond the information acquired or the opinion reached as a result of the treating relationship to opine as to the causation of any injury. *Lorenzi,* 519 F.Supp.2d at 750, n. 6.

Citing no authority for this proposition, Plaintiff argues that Dr. Haidak should be permitted to offer "causation testimony by exclusion." Docket No. 3606, p. 18. The Court finds that the purported causation testimony by exclusion does not meet the standards of *Daubert* for admissibility. Dr. Haidak may be qualified to testify about his diagnosis and treatment of Mr. Simmons, but not about the cause of Mr. Simmons' ONJ.[5]

 Dr. Meyer is an oral maxillofacial surgeon. He testified that he did not consider himself to be an expert in ONJ or in the risk factors for ONJ. Furthermore, he testified that, at the time he treated Mr. Simmons, he did not have an opinion to a reasonable degree of medical certainty as to what caused Mr. Simmons' ONJ. Docket No. 3496–13, p. 10 (p. 37 of Dr. Meyer's deposition). By his own admission, he has no expert opinion as to the cause of Mr. Simmons ONJ, and therefore, he may not offer expert testimony in this action.[6]

 Dr. Obeid is an oral surgeon whose attorney stated at his deposition that he was offered as a fact witness only. Docket No. 3596–30, p. 37 (p. 36 of Dr. Obeid's deposition). Plaintiff argues about a lot of things to which Dr. Obeid testified but never points the Court to an opinion of Dr. Obeid, under oath and to a reasonable degree of medical certainty (as opposed to notes in certain medical records), as to the cause of Mr. Simmons' ONJ. Therefore, Dr. Obeid has no admissible specific causation expert testimony to be offered.[7]

The fact that Dr. Obeid told Mr. Simmons that he had ONJ from the Aredia and Zometa drugs does not mean that Dr. Obeid is qualified to give an expert opinion as to specific causation in this case. Plaintiff argues that Dr. Obeid is well-qualified to diagnose Mr. Simmons (Docket No. 3606, p. 14). His qualifications to diagnose Mr. Simmons are not at issue. As noted above, the ability to diagnose medical conditions is not the same as the ability to opine as an expert about the *causes* of those medical conditions. *Gass,* 558 F.3d at 426.

## CONCLUSION

For all these reasons, Defendant's *Daubert* Motion to Exclude Causation Testimo-

---

5. The Court notes that Dr. Haidak's attorney stated, at least twice during Dr. Haidak's deposition, that the doctor was testifying as a "fact witness," not an expert. Docket No. 3606–15, pp. 16–17 (deposition, pp. 51 and 56).

6. As with Dr. Haidak, Plaintiff argues that Dr. Meyer should be permitted to testify as to "causation by exclusion" (Docket No. 3606, p. 17). Again, the Court finds that "causation by exclusion" testimony does not meet the standards of *Daubert* for admissibility.

7. Dr. Obeid's finding a "very close association" between ONJ and bisphosphonates, for example (Plaintiff's Opposition, p. 3), is not an opinion that Aredia and/or Zometa caused Mr. Simmons' ONJ. Dr. Obeid's opinion that leaving Mr. Simmons on Aredia treatment "compounded the issue" and worsened his jaw condition (Plaintiff's Opposition, p. 4) is not an opinion that Aredia and/or Zometa caused Mr. Simmons' ONJ.

ny of Plaintiffs' Non–Retained Experts (Docket No. 3494) is GRANTED.

IT IS SO ORDERED.